Lucile MENDES, Plaintiff-Appellant,

v.

MOORE–McCORMACK, INC., Lehn & Fink Products Corporation, Dorothy Gray, Ltd., and Dorothy Gray Salons, Defendants-Appellees.

No. 336, Docket 24969.

United States Court of Appeals Second Circuit.

Argued May 5, 1958.

Decided Aug. 7, 1958.

850

Herbert Lebovici, New York City (Lebovici & Safir, New York City, on the brief), for plaintiff-appellant.

George A. Garvey, New York City (Garvey & Conway, New York City, on the brief), for defendant-appellee Moore-McCormack, Inc.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

MOORE, Circuit Judge.

Plaintiff, Lucile Mendes, a beautician employed by defendant, Moore-McCormack, Inc., on board the S.S. Brazil, sued to recover damages allegedly sustained because of negligence and "the unseaworthy condition of its vessel * * * in that [the defendant] failed to take proper precautions to protect the plaintiff from suffering severe injuries and damages at a time when she was disabled and unable to help herself and in failing to provide the plaintiff with adequate and proper medical attention when she came to be in need of the same" (First Cause of Action, Compl. pars, Eighth and Tenth). A second cause of action sought maintenance and cure. The action against the defendants other than Moore-McCormack, Inc. was discontinued. The first cause of action was submitted to the jury which returned a verdict in favor of the defendant. The court decided the maintenance and cure cause of action, awarding plaintiff $360 (60 days at $6 a day).

On appeal plaintiff limits her assignment of error to failure to furnish adequate medical care and to the alleged refusal of the trial court to give certain charges requested by plaintiff.

The case is almost entirely factual. Plaintiff, a hair stylist, prior to her employment on the S.S. Brazil had been a patient at the United States Marine Hospital, Stapleton, Staten Island, suffering from amoebic dysentery. Pronounced "fit for duty" both by the hospital and defendant's doctor in April and May 1954, she made a thirty-eight day voyage on the cruise ship without event but on a second voyage became ill. She was examined by the ship's doctor and, preferring her own cabin to the ship's hospital, returned to bed there where the doctor again visited her. During the night while attempting to leave her bed plaintiff "blacked out," fell against the wash basin and fractured her nose. She was given medical attention that day by the ship's doctor and the defendant's port doctor and on the following day was removed to the Strangers' Hospital in Rio de Janeiro. There she was treated for infectious hepatitis, jaundice and the fractured nose. Plaintiff remained in that hospital from May 28, 1954 until July 20, 1954 when she returned on the S.S. Brazil and was taken by ambulance to the same Marine Hospital on August 2. She remained there as an in-patient until September 11 but continued as an out-patient until November 9.

After November 9 plaintiff continued to revisit the Marine Hospital and received treatment for various ailments, none of which appeared to be due to any condition arising on the S.S. Brazil. There were nine visits between November 9, 1954 and March 14, 1955 primarily for eyes, sinuses and headaches. A clinical entry on March 14, 1955 describes "most of her difficulty [to be] on anxiety basis."

In March 1955 plaintiff took a part-time position for about a month. Between April 20, 1955 and July 2, 1955 she

made many visits to the Marine Hospital complaining of occipital headaches, fatigability, constipation and vision difficulties. Physical examinations revealed no liver or spleen abnormalities.

In the beginning of July 1955 plaintiff accepted a position at the Schroon Manor Hotel where she worked from July 3 until August 15. She was hospitalized in Glens Falls for twelve days and after one more week at the hotel returned to her home. During September and October plaintiff again went to the Marine Hospital where she received further treatment as an in-patient. In October plaintiff resumed work as a hair stylist and continued until the end of December 1955.

In February 1956 plaintiff claims that she found a doctor who treated her for hepatitis and that under his care she improved rapidly.

Plaintiff's history of ailments has been quite extensive:

*August 2–29, 1952 Brooklyn Jewish Hospital*
(chills and fever, sinus, headaches, diarrhea, abdominal swelling)

*March 1953 Mayo Clinic—twelve days*

*August 24, 1953–November 8, 1953 Marine Hospital, Staten Island*
(amoebiasis, history of diarrhea and constipation for five years)

*January 11, 1954–February 8, 1954 Marine Hospital*
(hysterectomy and appendectomy and treatment for various complaints)

*May 28, 1954–July 21, 1954 Strangers' Hospital, Rio de Janeiro*

*August 2, 1954—September 11, 1954 Marine Hospital*
(in-patient)

*September 11, 1954–November 9, 1954 Marine Hospital*
(out-patient)

| | | |
|---|---|---|
| December | 16, 1954 | Marine Hospital |
| December | 22, 1954 | Marine Hospital |
| January | 7, 1955 | Marine Hospital |
| January | 20, 1955 | Marine Hospital |
| February | 3, 1955 | Marine Hospital |
| February | 24, 1955 | Marine Hospital |
| March | 8, 1955 | Marine Hospital |
| March | 14, 1955 | Marine Hospital |
| April | 20, 1955 | Marine Hospital |
| April | 25, 1955 | Marine Hospital |
| May | 9, 1955 | Marine Hospital |
| May | 23, 1955 | Marine Hospital |
| May | 24, 1955 | Marine Hospital |
| June | 21, 1955 | Marine Hospital |

*August 15–27, 1955 Glens Falls Hospital*
(diagnosis ureter spasm, subsiding cystitis)

*September 12–20, 1955 Marine Hospital*
(diagnosis, genito-urinary observation; psycho-physiologic reaction)

—◆—

■ Against this factual background appellant argues that "after November 14, 1954, the United States Marine Hospital refused to treat the condition of the plaintiff for infectious hepatitis" (Applt.'s Br., p. 6). The record discloses that subsequent to November 14, 1954 plaintiff made at least sixteen visits to the Marine Hospital and in September 1955 was given eight days of in-patient care. There is no basis whatsoever for her charge that after November 14 "defendants refused to provide it [treatment]" (Applt.'s Br., p. 7).

■■ Plaintiff next complains of an alleged refusal by the court to submit to the jury "failure of the defendants to

provide medical care and attention to the plaintiff for the period of time between November 10, 1954 and February 1956" (Applt.'s Br., p. 11). This argument is equally without factual foundation. The trial court specifically submitted to the jury plaintiff's claim "that she was not provided with proper medical attention" (87a). They were instructed that defendant was under a duty to provide treatment and that their burden amongst other things was "to resolve the conflict * * * as to whether there was proper and reasonably good medical treatment" (100a). The court adequately complied with plaintiff's request to charge that she was entitled to care subsequent to her leaving the ship "no matter what her health was before the voyage" (103a). Although parties are privileged to submit requests to charge the court is not required to deliver its charge in the very words chosen by the parties. If the law is fairly and accurately stated as it was here there is no error in the refusal to use the phraseology selected by either party.

In final analysis plaintiff's real grievance here is that the jury decided against her. Medical witnesses for the defendant testified as to the care and attention which plaintiff received. There was medical testimony that plaintiff's troubles from November 9, 1954 to November 27, 1955 were not due to hepatitis and that plaintiff was not in need of treatment for this disease on November 7, 1955 when she was examined. Plaintiff's doctor testified to the contrary. Having seen and heard plaintiff and the various medical witnesses, the jury, after a comprehensive charge, returned a verdict in defendant's favor.

As to maintenance and cure the trial court on the basis of plaintiff's claim at the rate of $42 a week carefully calculated the periods during which plaintiff could properly be awarded damages. There has been no error.

Judgment affirmed.